IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PARALLEL NETWORKS LICENSING, LLC, | ) ) ) ) |
| Plaintiff, | ) ) C.A. No._____ |
| v. | ) ) **JURY TRIAL DEMANDED** |
| INTERNATIONAL BUSINESS MACHINES CORPORATION, | ) ) ) ) |
| Defendant. | ) ) |

**PLAINTIFF'S COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Parallel Networks Licensing, LLC ("Parallel Networks" or "Plaintiff") files this Complaint for patent infringement against Defendant International Business Machines Corporation ("IBM" or "Defendant"), and alleges as follows:

**I.   PARTIES**

1. Plaintiff Parallel Networks Licensing, LLC is a Delaware limited liability company with a place of business as 1105 N. Market Street, Suite 300, Wilmington, DE 19801.

2. Upon information and belief, IBM is incorporated, organized and existing under the laws of the State of New York. IBM maintains its principal place of business at One New Orchard Road, Armonk, New York 10504. IBM may be served with process through its registered agent, Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801.

## II. JURISDICTION AND VENUE

3. Plaintiff repeats and re-alleges the allegations in Paragraphs 1 and 2 as though fully set forth in their entirety.

4. This action arises under the patent laws of the United States, Title 35, United States Code § 1, *et seq*. This Court has exclusive subject matter jurisdiction over this case for patent infringement under 28 U.S.C. §§ 1331 and 1338(a).

5. Personal jurisdiction exists generally over the Defendant because it has sufficient minimum contacts with the forum as a result of business conducted within the State of Delaware. Personal jurisdiction also exists specifically over the Defendant because it, directly or through subsidiaries or intermediaries, makes, uses, offers for sale, sells, imports, advertises, makes available and/or markets products and services within the State of Delaware that infringe the Asserted Patents, as described more particularly below.

6. Venue is appropriate in the District of Delaware under 28 U.S.C. §§ 1391(b), 1391(d) and 1400(b). Venue is further supported by the fact that this District and Court has significant experience with the patents asserted in this lawsuit and the related technology because of the activities and experience garnered in *Oracle Corporation et al. v. Parallel Networks LLC*, C.A. No. 06-414-SLR (D. Del. June 30, 2006) and *Quinstreet, Inc. v. Parallel Networks LLC*, C.A. No. 06-495-SLR (D. Del. Aug. 8, 2006) as set forth in the dockets, orders, and pleadings associated with each case.

## III. GENERAL ALLEGATIONS

7. United States Patent No. 5,894,554 ("the '554 Patent") entitled "SYSTEM FOR MANAGING DYNAMIC WEB PAGE GENERATION REQUESTS BY INTERCEPTING

REQUEST AT WEB SERVER AND ROUTING TO PAGE SERVER THEREBY RELEASING WEB SERVER TO PROCESS OTHER REQUESTS," was duly and legally issued by the United States Patent and Trademark Office on April 13, 1999 after full and fair examination.  Three requests for *ex parte* reexamination of the '554 Patent were filed on November 27, 2006, March 29, 2007, and April 3, 2007, respectively.  On July 24, 2012, the United States Patent Office duly and legally issued an *Ex Parte* Reexamination Certificate No. 5,894,554 C1 confirming the patentability of claims 12 – 49. On October 2, 2012, the United States Patent Office duly and legally issued a Certificate of Correction for claims 12 – 49.  Parallel Networks is the assignee of all rights, title, and interest in the '554 Patent, including the right to recover damages for past infringement.  A copy of the '554 Patent is attached as Exhibit A to this Complaint.

8. United States Patent No. 6,415,335 ("the '335 Patent") entitled "SYSTEM AND METHOD FOR MANAGING DYNAMIC WEB PAGE GENERATION REQUESTS," was duly and legally issued by the United States Patent and Trademark Office on July 2, 2002 after full and fair examination.  Three requests for *ex parte* reexamination of the '335 Patent were filed on November 27, 2006, March 28, 2007, and April 3, 2007, respectively.  On July 17, 2012, the United States Patent Office duly and legally issued an *Ex Parte* Reexamination Certificate No. 6,415,335 C1 confirming the patentability of claims 30 – 85. On September 11, 2012, the United States Patent Office duly and legally issued a Certificate of Correction for claims 30 – 85. Parallel Networks is the assignee of all rights, title, and interest in the '335 patent, including the right to recover damages for past infringement.  A copy of the '335 Patent is attached as Exhibit B to this Complaint.

9. The '554 Patent and the '335 Patent are referred to collectively as the "Asserted Patents." The Asserted Patents each disclose methods and apparatuses "for creating and

managing custom Web sites." In the summary of the invention section of the Asserted Patents it is explained: "[s]pecifically, the present invention claims a method and apparatus for managing dynamic web page generation requests." Figure 4 of the Asserted Patents provides an example of one embodiment of the claimed inventions.

10. IBM is engaged in the business of making, developing and selling systems and software that manage dynamic Web page generation requests. More particularly, IBM has made, offered and continues to offer for sale IBM WebSphere Application Server (WAS) (version 5.0 and later), including EJBs, Workload Management (WLM) facilities, InfoSphere, and related Web page generation and dynamic load balancing components, Load Balancer and/or Caching Proxy, On-Demand Router (ODR), IBM HTTP Server, Plug-Ins for web servers such as the IBM HTTP Server and other third party servers, Network Dispatcher and Metric Server systems and software, Tivoli systems and software including Tivoli Access Manager WebSEAL and/or WebSEAL proxy, and DB2 systems and software including the pureScale workload balancing feature (this and any and all similar products are referred to herein as "the Accused Instrumentalities"). The Accused Instrumentalities are embodied on machine readable medium and perform the claimed methods of the Asserted Patents.

11. IBM has infringed and continues to infringe each of the Asserted Patents by engaging in acts constituting infringement under 35 U.S.C. § 271, including, but not necessarily limited to one or more of making, using, selling, and/or offering to sell, in this District and elsewhere in the United States, and importing into this District and elsewhere in the United States, certain Accused Instrumentalities, including but not limited to, IBM WebSphere Application Server (WAS) (version 5.0 and later), including EJBs, Workload Management (WLM) facilities, InfoSphere, and related Web page generation and dynamic load balancing

components, Load Balancer and/or Caching Proxy, On-Demand Router (ODR), IBM HTTP Server, Plug-Ins for web servers such as the IBM HTTP Server and other third party servers, Network Dispatcher and Metric Server systems and software, Tivoli systems and software including Tivoli Access Manager WebSEAL and/or WebSEAL proxy, and DB2 systems and software including the pureScale workload balancing feature for management of dynamic Web page generation requests.

### IV. COUNT I: INFRINGEMENT OF THE '554 PATENT

12. Plaintiff repeats and re-alleges the allegations in Paragraphs 1 through 11 as though fully set forth in their entirety.

13. IBM has directly infringed and continues to infringe, directly and/or indirectly, the '554 Patent in this District or otherwise within the United States by making, using, selling, offering to sell, and/or importing in or into the United States, without authority the Accused Instrumentalities, that infringe one or more claims of the '554 Patent.

14. IBM has induced and is inducing infringement of the '554 Patent under 35 U.S.C. § 271(b) by others in this District and elsewhere in the United States. The direct infringement occurs by activities performed by IBM, its contractors and employees, and/or end users of the Accused Instrumentalities, in their intended use, including the management of dynamic Web page generation requests.

15. IBM specifically intends the users of the Accused Instrumentalities to infringe the '554 Patent, or, alternatively, has been willfully blind to the possibility that its inducing acts would cause infringement. By way of example, and not as a limitation, IBM induces such infringement by its affirmative actions of at least making its website and/or website functionality

available to customers and providing links and/or other directions on its website and/or the internet to instruct and teach users to use the Accused Instrumentalities in an infringing manner. Example instructions are found in: https://jazz.net/library/article/464/; http://pic.dhe.ibm.com/infocenter/wxdinfo/v6r0/index.jsp?topic=%2Fcom.ibm.websphere.xd.doc%2Finfo%2Fodoe_task%2Fcxdportaltopology.html; http://publib.boulder.ibm.com/infocenter/iisinfsv/v8r5/index.jsp?topic=/com.ibm.swg.im.iis.productization.iisinfsv.ha.install.doc/topics/wsisinst_pln_ha_frontendwebservers.html; http://pic.dhe.ibm.com/infocenter/iisinfsv/v8r5/index.jsp?topic=%2Fcom.ibm.swg.im.iis.productization.iisinfsv.ha.install.doc%2Ftopics%2Fwsisinst_pln_ha_xmeta_db2cluster.html; http://public.dhe.ibm.com/software/dw/data/bestpractices/MDMS-HA.pdf; http://www.ibm.com/developerworks/websphere/techjournal/1010_pape/1010_pape.html; http://www.ibm.com/developerworks/data/library/techarticle/dm-1002mdmavailability/; http://www.ibm.com/developerworks/tivoli/tutorials/tvwastam/; http://publib.boulder.ibm.com/tividd/td/ITAME/SC32-1134-01/en_US/HTML/amweb41_admin04.htm#ws-overview1031525; http://publib.boulder.ibm.com/infocenter/wsdoc400/v6r0/index.jsp?topic=/com.ibm.websphere.iseries.doc/info/ae/ae/tsec_inteover.html; http://publib.boulder.ibm.com/tividd/td/ITAME/SC32-1134-01/en_US/HTML/amweb41_admin04.htm#i1032038; http://publib.boulder.ibm.com/tividd/td/ITAME/SC32-1134-01/en_US/HTML/amweb41_admin04.htm#i1032038; http://www-03.ibm.com/software/products/us/en/extended-deployment/; http://www-01.ibm.com/support/docview.wss?uid=swg21219567. IBM's customers use the Accused

Instrumentalities to manage and host dynamic Web pages as described and claimed in the Asserted Patents.

16. Through its sales and support activities, IBM specifically intends its customers to infringe the '554 Patent. IBM was and remains aware that the normal and customary use of the Accused Instrumentalities in connection with the management of dynamic Web page generation requests infringes the '554 Patent. Thus, IBM's customers, by using the Accused Instrumentalities, directly infringe the claimed method(s) of the '554 Patent.

17. IBM possesses knowledge that use of the Accused Instrumentalities infringes the '554 Patent. For example, in January 2006, IBM was the subject of a Third-Party Complaint, in which a customer of IBM sought indemnification for claims of patent infringement on the Asserted Patents. Therefore, IBM has had knowledge of the claims of the Asserted Patents and specific knowledge that customers' use of the Accused Instrumentalities infringes the '554 Patent at least as early as January 26, 2006. Parallel Networks also provided IBM specific notice concerning the Asserted Patents on November 27, 2012.

18. Accordingly, a reasonable inference is that IBM specifically intends for others, such as resellers and end-users, to directly infringe one or more claims of the '554 Patent in the United States because IBM has knowledge of the '554 Patent and IBM actually induces others, such as resellers and end-users, to directly infringe the '554 Patent by using, selling, offering to sell, exporting, supplying and/or distributing within the United States the Accused Instrumentalities. Upon information and belief, IBM has generated significant revenue in connection with the sales of the Accused Instrumentalities. IBM knew or should have known that such actions would induce actual infringement.

19. IBM indirectly infringes one or more claims of the '554 Patent by contributory infringement under 35 U.S.C. § 271(c).  Direct infringement is the result of activities performed by resellers and end users of the Accused Instrumentalities.  IBM had actual notice of the '554 Patent at least by January 26, 2006 and again after the reexamination on November 27, 2012.

20. The Accused Instrumentalities include particular functionality within web servers, dispatchers, page servers, and data sources relating to the management of dynamic Web page generation requests.  The Accused Instrumentalities do not function in an acceptable manner absent the claimed functionality for managing dynamic Web page generation requests.  Furthermore, the functionality of managing dynamic Web page generation requests does not operate in isolation, but is designed to operate with the Accused Instrumentalities, and absent the claimed functionality of managing dynamic Web page generation requests, the Accused Instrumentalities would not operate in an acceptable manner.

21. The Accused Instrumentalities, including but not limited to, IBM WebSphere Application Server (WAS) (version 5.0 and later), including EJBs, Workload Management (WLM) facilities, InfoSphere, and related Web page generation and dynamic load balancing components, Load Balancer and/or Caching Proxy, On-Demand Router (ODR), IBM HTTP Server, Plug-Ins for web servers such as the IBM HTTP Server and other third party servers, Network Dispatcher and Metric Server systems and software, Tivoli systems and software including Tivoli Access Manager WebSEAL and/or WebSEAL proxy, and DB2 systems and software including the pureScale workload balancing feature are especially adapted to operate in Accused Instrumentalities for managing dynamic Web page generation requests.

22. The system and software for managing dynamic Web page generation requests is not a staple article or commodity of commerce and the use of this system and software is

required for operation of the Accused Instrumentalities. Any other use would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.

23. The system and software for managing dynamic Web page generation requests in the Accused Instrumentalities are a material part of the invention of the '554 Patent and are especially made or adapted for the infringing manufacture, sale, and/or use of the Accused Instrumentalities. The Accused Instrumentalities, including but not limited to, IBM WebSphere Application Server (WAS) (version 5.0 and later), including EJBs, Workload Management (WLM) facilities, InfoSphere, and related Web page generation and dynamic load balancing components, Load Balancer and/or Caching Proxy, On-Demand Router (ODR), IBM HTTP Server, Plug-Ins for web servers such as the IBM HTTP Server and other third party servers, Network Dispatcher and Metric Server systems and software, Tivoli systems and software including Tivoli Access Manager WebSEAL and/or WebSEAL proxy, and DB2 systems and software including the pureScale workload balancing feature are especially made or adapted for management of dynamic Web page requests that infringe the '554 Patent. Because sales and use of the Accused Instrumentalities, including the system and software for managing dynamic Web page generation requests infringe the '554 Patent, IBM's sales of the Accused Instrumentalities have no substantial non-infringing uses.

24. Accordingly, IBM makes, offers for sale, or sells, within the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

IBM provides to others the Accused Instrumentalities.  IBM has generated significant revenue in connection with the sales of the Accused Instrumentalities.

25. By providing the Accused Instrumentalities identified above, which have no substantial non-infringing uses, IBM contributes to the direct infringement of users of said applications, software, and computer equipment. As discussed *supra* at Paragraph 17, IBM possesses knowledge that its use of the Accused Instrumentalities infringes the '554 Patent.

26. As a direct and proximate consequence of the acts and practices of the Defendant in infringing, directly and/or indirectly, one or more claims of the '554 Patent, Parallel Networks has suffered, is suffering, and, unless such acts and practices are enjoined by the Court, will continue to suffer injury to its business and property rights.

27. As a direct and proximate consequence of the acts and practices of the Defendant in infringing, directly and/or indirectly, one or more claims of the '554 Patent, Parallel Networks has suffered, is suffering, and will continue to suffer injury and damages for which it is entitled to relief under 35 U.S.C. § 284, in an amount to be determined at trial.

28. In addition, the infringing acts and practices of the Defendant have caused, is causing, and, unless such acts and practices are enjoined by the Court, will continue to cause immediate and irreparable harm to Parallel Networks for which there is no adequate remedy at law, and for which Parallel Networks is entitled to injunctive relief under 35 U.S.C. § 283.

29. IBM has known about each of the Asserted Patents, as set forth *supra* at Paragraph 17. Moreover, IBM lacks justifiable belief that there is no infringement, or that the infringed claims are invalid, and has acted with objective recklessness in its infringing activity.

IBM's infringement is therefore willful, and Parallel Networks is entitled to an award of exemplary damages, attorneys' fees, and costs in bringing this action.

## V.    COUNT II:  INFRINGEMENT OF THE '335 PATENT

30.    Plaintiff repeats and re-alleges the allegations in Paragraphs 1 through 29 as though fully set forth in their entirety.

31.    IBM has directly infringed and continues to infringe, directly and/or indirectly, the '335 Patent in this District or otherwise within the United States by making, using, selling, offering to sell, and/or importing in or into the United States, without authority the Accused Instrumentalities, that infringe one or more claims of the '335 Patent.

32.    IBM has induced and is inducing infringement of the '335 Patent under 35 U.S.C. § 271(b) by others in this District and elsewhere in the United States. The direct infringement occurs by activities performed by IBM, its contractors and employees, and/or end users of the Accused Instrumentalities, in their intended use, including the management of dynamic Web page generation requests.

33.    IBM specifically intends the users of the Accused Instrumentalities to infringe the '335 Patent, or, alternatively, has been willfully blind to the possibility that its inducing acts would cause infringement. By way of example, and not as a limitation, IBM induces such infringement by its affirmative actions of at least making its website and/or website functionality available to customers and providing links and/or other directions on its website and/or the internet to instruct and teach users to use the Accused Instrumentalities in an infringing manner. Example instructions are found in: https://jazz.net/library/article/464/;http://pic.dhe.ibm.com/infocenter/wxdinfo/v6r0/index.jsp?topi

c=%2Fcom.ibm.websphere.xd.doc%2Finfo%2Fodoe_task%2Fcxdportaltopology.html;

http://publib.boulder.ibm.com/infocenter/iisinfsv/v8r5/index.jsp?topic=/com.ibm.swg.im.iis.productization.iisinfsv.ha.install.doc/topics/wsisinst_pln_ha_frontendwebservers.html;

http://pic.dhe.ibm.com/infocenter/iisinfsv/v8r5/index.jsp?topic=%2Fcom.ibm.swg.im.iis.productization.iisinfsv.ha.install.doc%2Ftopics%2Fwsisinst_pln_ha_xmeta_db2cluster.html;

http://public.dhe.ibm.com/software/dw/data/bestpractices/MDMS-HA.pdf;http://www.ibm.com/developerworks/websphere/techjournal/1010_pape/1010_pape.html; http://www.ibm.com/developerworks/data/library/techarticle/dm-1002mdmavailability/;

http://www.ibm.com/developerworks/tivoli/tutorials/tvwastam/;

http://publib.boulder.ibm.com/tividd/td/ITAME/SC32-1134-01/en_US/HTML/amweb41_admin04.htm#ws-overview1031525;

http://publib.boulder.ibm.com/infocenter/wsdoc400/v6r0/index.jsp?topic=/com.ibm.websphere.iseries.doc/info/ae/ae/tsec_inteover.html; http://publib.boulder.ibm.com/tividd/td/ITAME/SC32-1134-01/en_US/HTML/amweb41_admin04.htm#i1032038;

http://publib.boulder.ibm.com/tividd/td/ITAME/SC32-1134-01/en_US/HTML/amweb41_admin04.htm#i1032038; http://www-03.ibm.com/software/products/us/en/extended-deployment/; http://www-01.ibm.com/support/docview.wss?uid=swg21219567. IBM's customers use the Accused Instrumentalities to manage and host dynamic Web pages as described and claimed in the Asserted Patents.

34. Through its sales and support activities, IBM specifically intends its customers to infringe the '335 Patent. IBM was and remains aware that the normal and customary use of the Accused Instrumentalities in connection with the management of dynamic Web page generation

12

requests infringes the '335 Patent.  Thus, IBM's customers, by using the Accused Instrumentalities, directly infringe the claimed method(s) of the '335 Patent.

35.     IBM possesses knowledge that use of the Accused Instrumentalities infringes the '335 Patent. For example, in January 2006, IBM was the subject of a Third-Party Complaint, in which a customer of IBM sought indemnification for claims of patent infringement on the Asserted Patents. Therefore, IBM has had knowledge of the claims of the Asserted Patents and specific knowledge that customers' use of the Accused Instrumentalities infringes the '335 Patent at least as early as January 26, 2006.  Parallel Networks also provided IBM specific notice concerning the Asserted Patents on November 27, 2012.

36.     Accordingly, a reasonable inference is that IBM specifically intends for others, such as resellers and end-users, to directly infringe one or more claims of the '335 Patent in the United States because IBM has knowledge of the '335 Patent and IBM actually induces others, such as resellers and end-users, to directly infringe the '335 Patent by using, selling, offering to sell, exporting, supplying and/or distributing within the United States the Accused Instrumentalities. Upon information and belief, IBM has generated significant revenue in connection with the sales of the Accused Instrumentalities.  IBM knew or should have known that such actions would induce actual infringement.

37.     IBM indirectly infringes one or more claims of the '335 Patent by contributory infringement under 35 U.S.C. § 271(c).  Direct infringement is the result of activities performed by resellers and end users of the Accused Instrumentalities.  IBM had actual notice of the '335 Patent at least by January 26, 2006 and again after the reexamination on November 27, 2012.

38. The Accused Instrumentalities include particular functionality within web servers, dispatchers, page servers, and data sources relating to the management of dynamic Web page generation requests. The Accused Instrumentalities do not function in an acceptable manner absent the claimed functionality for managing dynamic Web page generation requests. Furthermore, the functionality of managing dynamic Web page generation requests does not operate in isolation, but is designed to operate with the Accused Instrumentalities, and absent the claimed functionality of managing dynamic Web page generation requests, the Accused Instrumentalities would not operate in an acceptable manner.

39. The Accused Instrumentalities, including but not limited to, IBM WebSphere Application Server (WAS) (version 5.0 and later), including EJBs, Workload Management (WLM) facilities, InfoSphere, and related Web page generation and dynamic load balancing components, Load Balancer and/or Caching Proxy, On-Demand Router (ODR), IBM HTTP Server, Plug-Ins for web servers such as the IBM HTTP Server and other third party servers, Network Dispatcher and Metric Server systems and software, Tivoli systems and software including Tivoli Access Manager WebSEAL and/or WebSEAL proxy, and DB2 systems and software including the pureScale workload balancing feature are especially adapted to operate in Accused Instrumentalities for managing dynamic Web page generation requests.

40. The system and software for managing dynamic Web page generation requests is not a staple article or commodity of commerce and the use of this system and software is required for operation of the Accused Instrumentalities. Any other use would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.

41. The system and software for managing dynamic Web page generation requests in the Accused Instrumentalities are a material part of the invention of the '335 Patent and are

especially made or adapted for the infringing manufacture, sale, and/or use of the Accused Instrumentalities. The Accused Instrumentalities, including but not limited to, IBM WebSphere Application Server (WAS) (version 5.0 and later), including EJBs, Workload Management (WLM) facilities, InfoSphere, and related Web page generation and dynamic load balancing components, Load Balancer and/or Caching Proxy, On-Demand Router (ODR), IBM HTTP Server, Plug-Ins for web servers such as the IBM HTTP Server and other third party servers, Network Dispatcher and Metric Server systems and software, Tivoli systems and software including Tivoli Access Manager WebSEAL and/or WebSEAL proxy, and DB2 systems and software including the pureScale workload balancing feature are especially made or adapted for management of dynamic Web page requests that infringe the '335 Patent. Because sales and use of the Accused Instrumentalities, including the system and software for managing dynamic Web page generation requests infringe the '335 Patent, IBM's sales of the Accused Instrumentalities have no substantial non-infringing uses.

42. Accordingly, IBM makes, offers for sale, or sells, within the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use. IBM provides to others the Accused Instrumentalities. IBM has generated significant revenue in connection with the sales of the Accused Instrumentalities.

43. By providing the Accused Instrumentalities identified above, which have no substantial non-infringing uses, IBM contributes to the direct infringement of users of said

15

applications, software, and computer equipment. As discussed *supra* at Paragraph 35, IBM possesses knowledge that its use of the Accused Instrumentalities infringes the '335 Patent.

44. As a direct and proximate consequence of the acts and practices of the Defendant in infringing, directly and/or indirectly, one or more claims of the '335 Patent, Parallel Networks has suffered, is suffering, and, unless such acts and practices are enjoined by the Court, will continue to suffer injury to its business and property rights.

45. As a direct and proximate consequence of the acts and practices of the Defendant in infringing, directly and/or indirectly, one or more claims of the '335 Patent, Parallel Networks has suffered, is suffering, and will continue to suffer injury and damages for which it is entitled to relief under 35 U.S.C. § 284, in an amount to be determined at trial.

46. In addition, the infringing acts and practices of the Defendant have caused, is causing, and, unless such acts and practices are enjoined by the Court, will continue to cause immediate and irreparable harm to Parallel Networks for which there is no adequate remedy at law, and for which Parallel Networks is entitled to injunctive relief under 35 U.S.C. § 283.

47. IBM has known about each of the Asserted Patents, as set forth *supra* at Paragraph 35. Moreover, IBM lacks justifiable belief that there is no infringement, or that the infringed claims are invalid, and has acted with objective recklessness in its infringing activity. IBM's infringement is therefore willful, and Parallel Networks is entitled to an award of exemplary damages, attorneys' fees, and costs in bringing this action.

### VI. NOTICE OF REQUIREMENT OF LITIGATION HOLD

48. Defendant is hereby notified it is legally obligated to locate, preserve, and maintain all records, notes, drawings, documents, data, communications, materials, electronic

recordings, audio/video/photographic recordings, and digital files, including edited and unedited or "raw" source material, and other information and tangible things that Defendant knows, or reasonably should know, may be relevant to actual or potential claims, counterclaims, defenses, and/or damages by any party or potential party in this lawsuit, whether created or residing in hard copy form or in the form of electronically stored information (hereafter collectively referred to as "Potential Evidence").

49. As used above, the phrase "electronically stored information" includes without limitation: computer files (and file fragments), e-mail (both sent and received, whether internally or externally), information concerning e-mail (including but not limited to logs of e-mail history and usage, header information, and deleted but recoverable e-mails), text files (including drafts, revisions, and active or deleted word processing documents), instant messages, audio recordings and files, video footage and files, audio files, photographic footage and files, spreadsheets, databases, calendars, telephone logs, contact manager information, internet usage files, and all other information created, received, or maintained on any and all electronic and/or digital forms, sources and media, including, without limitation, any and all hard disks, removable media, peripheral computer or electronic storage devices, laptop computers, mobile phones, personal data assistant devices, Blackberry devices, iPhones, video cameras and still cameras, and any and all other locations where electronic data is stored. These sources may also include any personal electronic, digital, and storage devices of any and all of Defendant's agents, resellers, or employees if Defendant's electronically stored information resides there.

50. Defendant is hereby further notified and forewarned that any alteration, destruction, negligent loss, or unavailability, by act or omission, of any Potential Evidence may result in damages or a legal presumption by the Court and/or jury that the Potential Evidence is

not favorable to Defendant's claims and/or defenses. To avoid such a result, Defendant's preservation duties include, but are not limited to, the requirement that Defendant immediately notify its agents and employees to halt and/or supervise the auto-delete functions of Defendant's electronic systems and refrain from deleting Potential Evidence, either manually or through a policy of periodic deletion.

## VII.   PRAYER FOR RELIEF

Plaintiff prays for the following relief:

A.   A judgment that IBM has directly infringed the '554 Patent, contributorily infringed the '554 Patent, and/or induced the infringement of the '554 Patent;

B.   A judgment that IBM has directly infringed the '335 Patent, contributorily infringed the '335 Patent, and/or induced the infringement of the '335 Patent;

C.   A judgment and order enjoining IBM, its employees and agents, and any other person(s) in active concert or participation with it from directly infringing, contributorily infringing, and/or inducing the infringement of the '554 Patent;

D.   A judgment and order enjoining IBM, its employees and agents, and any other person(s) in active concert or participation with it from directly infringing, contributorily infringing, and/or inducing the infringement of the '335 Patent;

E.   A judgment and order requiring IBM to pay Plaintiff's actual damages under 35 U.S.C. § 284 (but in no event less than a reasonable royalty), and supplemental damages for any continuing post-verdict infringement up until entry of the final judgment with an accounting as needed;

F.	A judgment and order requiring IBM to pay Plaintiff pre-judgment and post-judgment interest on the damages awarded, including an award of pre-judgment interest, pursuant to 35 U.S.C. § 284, from the date of each act of infringement of the Asserted Patents by IBM to the day a damages judgment is entered, and an award of post-judgment interest, pursuant to 28 U.S.C. § 1961, continuing until such judgment is paid, at the maximum rate allowed by law;

G.	A judgment and order finding this to be an exceptional case and requiring IBM to pay the costs of this action (including all disbursements) and attorneys' fees, pursuant to 35 U.S.C. § 285;

H.	A judgment and order finding that IBM's infringement is willful and deliberate, entitling Plaintiff to enhanced damages pursuant to 35 U.S.C. § 284;

I.	In the alternative, in the event injunctive relief is not granted as requested by Plaintiff, an award of a compulsory future royalty; and

J.	Such other and further relief as the Court deems just and equitable.

## VIII.  DEMAND FOR JURY TRIAL

Plaintiff hereby demands that all issues be determined by a jury.

OF COUNSEL

**MCKOOL SMITH, PC**

Douglas Cawley
Christopher Bovenkamp
300 Crescent Court, Suite 1500
Dallas, TX 75201
(214) 978-4940
*dcawley@mckoolsmith.com*
*cbovenkamp@mckoolsmith.com*

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

*/s/ Adam W. Poff*
Adam W. Poff (No. 3990)
Monté T. Squire (No. 4764)
Gregory J. Brodzik (No. 5722)
Rodney Square
1000 North King Street
Wilmington, DE  19801
(302) 57-6600
*apoff@ycst.com*
*msquire@ycst.com*
*gbrodzik@ycst.com*

*Attorneys for Plaintiff Parallel Networks Licensing, LLC*

Dated: December 20, 2013