IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PARALLEL NETWORKS LICENSING, LLC, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 13-2072-SLR-SRF |
| INTERNATIONAL BUSINESS MACHINES CORPORATION, | ) ) ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

## I. INTRODUCTION

Presently before the court in this patent infringement action are the following motions: (1) plaintiff Parallel Networks Licensing, LLC's ("Parallel Networks" or "plaintiff") motion to compel discovery (D.I. 45); (2) Parallel Networks' motion to correct and amend its motion to compel (D.I. 70); (3) Parallel Networks' motion for leave to amend its complaint for patent infringement (D.I. 57); and (4) Parallel Networks' motion to correct claims of the patents-in-suit (D.I. 79). For the following reasons, the motion to compel is granted-in-part and denied-in-part; the motion to correct and amend the motion to compel is denied as moot; the motion for leave to amend the complaint for patent infringement is denied as moot; and the motion to correct the claims of the patents-in-suit is denied.

## II. BACKGROUND

Parallel Networks initiated the instant action on December 20, 2013, asserting infringement of United States Patent No. 5,894,554 ("the '554 patent"), entitled "System for Managing Dynamic Web Page Generation Requests by Intercepting Request at Web Server and Routing to Page Server Thereby Releasing Web Server to Process Other Requests," and United States Patent No. 6,415,335 ("the '335 patent;" together with the '554 patent, the "patents-in-

suit"), entitled "System and Method for Managing Dynamic Web Page Generation Requests."
(D.I. 1) The '554 patent originally issued in 1999, and the '335 patent originally issued in 2002.
(D.I. 46, Exs. A-B)

Parallel Networks previously asserted infringement of the patents-in-suit against Oracle Corporation and Oracle U.S.A. Inc. ("Oracle") in this court (the "Oracle action"). (C.A. No. 06-414-SLR; D.I. 355, D.I. 371) During the pendency of the Oracle action, both patents-in-suit were placed into reexamination proceedings before the United States Patent and Trademark Office ("PTO"). (D.I. 46 at 5-6) The reexaminations of the patents-in-suit continued after Parallel Networks and Oracle ultimately settled the Oracle action. (C.A. No. 06-414-SLR; D.I. 479, D.I. 480)

On April 10, 2012, the PTO conducted an interview with Parallel Networks, and an agreement was reached to include amendments proposed by Parallel Networks that would render many of the claims allowable. (D.I. 46, Ex. I) Parallel Networks subsequently submitted a final office action response on May 3, 2012, proposing amendments and cancellations consistent with the interview with the PTO. (*Id.*, Ex. J) The PTO issued a notice of intent to issue a reexamination certificate, allowing the claims as amended on May 30, 2012. (*Id.*, Ex. K)

On July 24, 2012, the PTO issued an *ex parte* reexamination certificate for the '554 patent, stating that "[c]laims 1-11 are cancelled [and] [n]ew claims 12-49 are added and determined to be patentable. (D.I. 1 at ¶ 7; D.I. 46, Ex. L) New claims 12-49, as printed in the reexamination certificate, were the wrong set of claims. (D.I. 46, Ex. L) On October 2, 2012, the PTO issued a certificate of correction, replacing claims 12 through 49 of the '554 patent with corrected claims 12-49. (*Id.*, Ex. O)

On July 17, 2012, the PTO issued an *ex parte* reexamination certificate for the '335 patent, cancelling all 29 originally issued claims and confirming the patentability of new claims 30 through 85, which were also incorrect. (D.I. 1 at ¶ 8; D.I. 46, Ex. M) On September 11, 2012, the PTO issued a certificate of correction for claims 30 through 85 of the '335 patent, replacing them with corrected claims 30 through 85. (D.I. 46, Ex. P)

Parallel Networks served IBM with its first round of discovery requests in April 2014. IBM objected to the requests, alleging that information prior to 2012 is irrelevant to the alleged infringement of the patents-in-suit. (D.I. 46, Ex. C at ¶ 9; Ex. D at ¶ 9; Ex. E at ¶ 9) IBM subsequently provided pre-2012 information regarding its knowledge of the patents-in-suit in response to Interrogatory No. 1, but continued to refuse to produce pre-2012 financial information. (*Id.*, Ex. H at 31:24-32:2)

On March 17, 2015, Judge Robinson issued a Memorandum Opinion and Order granting IBM's motion for partial judgment on the pleadings. (D.I. 182, D.I. 183) The court concluded that it could not correct the errors in the patents-in-suit, and held that Parallel Networks may not recover damages for alleged infringement occurring prior to the issuance of the certificates of correction in 2012. (*Id.*)

### III. DISCUSSION

#### A. Motion to Compel

Federal Rule of Civil Procedure 37 provides that, "[o]n notice to other parties and all affected persons, a party may move for an order compelling ... discovery." Fed. R. Civ. P. 37(a)(1). A motion to compel brought under Rule 37 is controlled by Rule 26(b)(1), which provides that:

3

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Fed. R. Civ. P. 26(b)(1). Although it is well-established that courts should liberally construe relevancy in the discovery context, "discovery is not without bounds." *See U.S. v. Dentsply Int'l, Inc.*, 2000 WL 654286, at *4 (D. Del. May 10, 2000). The court may limit discovery that would otherwise be permissible pursuant to Rule 26(b)(1) on a showing that the discovery sought is unreasonably cumulative or duplicative, or that the burden or expense associated with producing the information outweighs the likely benefit to the requesting party in obtaining the discovery. *Id.*; Fed. R. Civ. P. 26(b)(2)(C).

In support of its motion to compel, Parallel Networks first alleges that pre-2012 discovery is relevant because the court should judicially correct the patent claims and apply them retroactively to permit Parallel Networks' requested award of damages for infringement occurring prior to 2012. (D.I. 46 at 10-12) As a preliminary matter, this court previously granted IBM's motion for partial judgment on the pleadings, determining that the court cannot correct the errors in the patents-in-suit, as they were not obvious from the face of the patent, and holding that Parallel Networks may not recover damages for alleged infringement occurring prior to the issuance of the certificates of correction.[1] *See Parallel Networks Licensing, LLC v. Int'l Bus. Machines Corp.*, C.A. No. 13-2072-SLR-SRF, --- F. Supp. 3d ----, 2015 WL 1227968, at

---

[1] This resolution of the underlying substantive issue on a motion for judgment on the pleadings obviates Parallel Network's concern that the court should not resolve substantive issues in a ruling on a discovery motion. (D.I. 46 at 7-9)

4

*3-4 (D. Del. Mar. 17, 2015). Therefore, Parallel Networks' motion to compel discovery prior to 2012 is denied to the extent that it is based on arguments raised pursuant to 35 U.S.C. § 254.

The court next turns to Parallel Networks' alternative argument that the pre-2012 discovery is relevant regardless of when the damages period starts. According to Parallel Networks, pre-2012 design documents for the accused features and technical specifications are relevant because IBM continues to support its customers' use of products sold prior to 2012, and post-2012 products were the result of research, design, and development during the years prior to 2012. (D.I. 46 at 12-14) Parallel Networks specifically identifies the absence of core technical documents in connection with IBM's public cloud offerings, as well as design and development documents for products sold or used by IBM customers since 2012. (D.I. 54 at 5) In response, IBM contends that it already produced extensive technical information pre-dating 2012, but does not challenge the relevance of the discovery requested by Parallel Networks. (D.I. 49 at 14-15)

Parallel Networks' motion to compel is granted-in-part to the extent that it seeks production of pre- or post-2012 core technical documents and design and development documents relating to the accused products that IBM has sold or that its customers have used post-2012 that have not already been produced.[2] However, Parallel Networks' motion is denied to the extent that it seeks production of documents in connection with IBM's laches defense. The laches period "is measured from the time the plaintiff knew or reasonably should have known of the defendant's alleged infringing activities to the date of suit. However, the period

---

[2] Parallel Networks acknowledges that "IBM has already substantially completed its production of core technical documents for each of the accused products identified by Parallel Networks," with the exception of source code. (D.I. 46 at 17) IBM confirms that it "has already produced extensive technical information pre-dating 2012, including core technical documents relating to" the WebSphere product specifically cited by Parallel Networks, and represents that it collected and produced source code for the accused products as of the week its answering brief was filed. (D.I. 49 at 15 n.7)

5

does not begin prior to the issuance of the patent." *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1032 (Fed. Cir. 1992). The court has determined that the patents-in-suit issued in 2012. *See Parallel Networks*, 2015 WL 1227968, at *4. Therefore, pre-2012 discovery is not relevant to IBM's laches defense.

Lastly, Parallel Networks contends that financial documents predating 2012 are relevant to the reasonable royalty analysis, which requires consideration of the financial state of the alleged infringer prior to the date of the hypothetical negotiation. (D.I. 46 at 14-15) IBM responds that pre-2012 financial information for the accused products is not relevant to damages because it dates back almost six years before the patents issued, and damages relating to sales made before the patents issued are not relevant to the reasonable royalty calculation. (D.I. 49 at 15)

The Federal Circuit has described a reasonable royalty as "the amount that a person, desiring to manufacture [, use, or] sell a patented article, as a business proposition, would be willing to pay as a royalty and yet be able to make [, use, or] sell the patented article, in the market, at a reasonable profit." *Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 435 F.3d 1356, 1361 (Fed. Cir. 2006) (internal quotations omitted). In the absence of an established royalty, a reasonable royalty is calculated based upon hypothetical negotiations between a willing licensor and a willing licensee when the infringement began. *See Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970); *see also ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010); *Wordtech Sys., Inc. v. Integrated Networks Solutions, Inc.*, 609 F.3d 1308, 1318 (Fed. Cir. 2010). Infringement begins when both the patent has issued and the accused products are sold. *See Wang Labs., Inc. v. Toshiba Corp.*, 993 F.2d 858, 869 (Fed. Cir. 1993).

The court previously concluded that the alleged infringement began in 2012, after the certificates of correction issued. *See Parallel Networks*, 2015 WL 1227968, at *4; *see also Laser Dynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 76 (Fed. Cir. 2012) (observing that the hypothetical negotiation must focus on the date when infringement began). Therefore, the court must look to the financial information available to the parties at the time the alleged infringement occurred in 2012 to avoid making an "after-the-fact assessment." *Riles v. Shell Exploration & Prod. Co.*, 298 F.3d 1302, 1313 (Fed. Cir. 2002).

Pre-2012 financial information may be relevant to the reasonable royalty analysis for purposes of determining how the parties would have valued the patents-in-suit at the time of the hypothetical negotiation. However, because the "analysis is limited in temporal scope to the time that the hypothetical negotiation would have occurred," Parallel Networks' motion to compel IBM to produce financial information for the six year period predating the date of infringement is overly broad and is, therefore, denied. *Biax Corp. v. Nvidia Corp.*, 271 F.R.D. 200, 220 (D. Colo. 2010); *see also Teles AG Informationstechnologien v. Quintum Techs., LLC*, 2009 WL 3648458, at *3 (D. Del. Oct. 30, 2009) (concluding that discovery of financial information over a fourteen-year period was not necessary to establish a reasonable royalty).

**B.    Motion to Correct and Amend Plaintiff's Motion to Compel**

Following the filing of the motion to compel, Parallel Networks filed a motion to correct and amend its briefing regarding the motion to compel and the motion for judgment on the pleadings because it mistakenly identified a dependent claim's reference to a cancelled claim as an error evident on the face of the patent. (D.I. 71 at 1) The court acknowledged this mistake in its March 17, 2015 decision, stating that "[s]uch error, calling into question the antecedent basis of a limitation, does not put a potential infringer on notice of an error on the face of the patent

7

that would require an entire new set of claims." (D.I. 182 at 7) The proposed correction affects Parallel Networks' arguments regarding the certificates of correction, which were resolved in the court's March 17, 2015 decision. In light of the fact that the underlying issue has been resolved by the court, Parallel Networks' motion to correct and amend the briefing is denied as moot.

### C. Motion to Amend the Complaint

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that after a responsive pleading has been filed, a party may amend its pleading "only with the opposing party's written consent or the court's leave," and "[t]he court should freely give leave when justice so requires." The decision to grant or deny leave to amend lies within the discretion of the court. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997). The Third Circuit has adopted a liberal approach to the amendment of pleadings. *See Dole v. Arco*, 921 F.2d 484, 487 (3d Cir. 1990). In the absence of undue delay, bad faith, or dilatory motives on the part of the moving party, the amendment should be freely granted, unless it is futile or unfairly prejudicial to the non-moving party. *See Foman*, 371 U.S. at 182; *In re Burlington*, 114 F.3d at 1434.

By way of its motion for leave to amend the complaint, Parallel Networks seeks to add allegations regarding (1) the PTO's errors in printing the *ex parte* reexamination certificates for the patents-in-suit, and (2) Parallel Networks' claim for damages predating the issuance of the *ex parte* reexamination certificates. (D.I. 58 at 1) In view of the court's prior rejection of Parallel Networks' arguments regarding the propriety of judicial correction of the errors in the reexamination certificates, the court concludes that Parallel Networks' proposed amendments would be futile. (D.I. 182; D.I. 183) Consequently, Parallel Networks' motion to amend the complaint is denied.

### D. Motion to Correct the Claims of the Patents-In-Suit

By way of its motion to correct the patent claims, Parallel Networks asks the court to retroactively correct the PTO's printing errors in the patents-in-suit. (D.I. 80 at 7-15) The court's March 17, 2015 decision concluded that the errors in the patents-in-suit were not obvious from the face of the patents and, as such, the court could not correct those errors. (D.I. 182; D.I. 183) Consistent with the court's previous ruling, Parallel Network's motion to correct the claims of the patents-in-suit is denied.

### IV. CONCLUSION

For the foregoing reasons, Parallel Networks' motion to compel (D.I. 45) is granted-in-part and denied-in-part; the motion to correct and amend the motion to compel (D.I. 70) is denied as moot; the motion to amend the complaint for patent infringement (D.I. 57) is denied as moot; and the motion to correct the claims of the patents-in-suit (D.I. 79) is denied. An Order consistent with this Memorandum Opinion shall issue.

This Memorandum Opinion is filed pursuant to 28 U.S.C. § 636(b)(1)(A), Fed. R. Civ. P. 72(a), and D. Del. LR 72.1(a)(2). The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Memorandum Opinion. Fed. R. Civ. P. 72(a). The objections and responses to the objections are limited to ten (10) pages each.

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: August 20, 2015

Sherry R. Fallon
United States Magistrate Judge